IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTINE BUFFONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 05 C 5551 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| ROSEBUD RESTAURANTS, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kristine Buffone filed a two-count complaint asserting that her former employer, Rosebud Restaurants, Inc., discriminated against her because she was pregnant, in violation of the Pregnancy Discrimination Act ("PDA"), interfered with her Federal Medical Leave Act ("FMLA") rights, and retaliated against her for exercising FMLA rights. Rosebud's motion to dismiss the complaint was denied earlier. Minute Order, Dkt. No. 19 (Dec. 14, 2005). Before this court is Rosebud's motion for summary judgment.

### FACTS

Kristine Buffone was employed by Rosebud for four years. She began as a host in 1999. In late 2002, Rosebud promoted her to manager of La Rosetta, a restaurant in downtown Chicago now known as Rosebud Theater District. While employed as a manager, Buffone became pregnant. On June 9, 2003, she informed her supervisor, Yvonne Burke, La Rosetta's general manager, of her pregnancy. Up to that point, Buffone's performance was satisfactory. However, she was taken off the management schedule at La Rosetta soon after announcing her pregnancy. Her last day was July 7, 2003. A non-pregnant woman replaced Buffone after she left.

The parties dispute why Buffone was taken off the schedule. Buffone contends that in June 2003, her supervisor told her she was "getting big," "getting too big," and "you're getting too big, we have to get you out of there." Pl. Facts ¶ 8. Soon after those statements, Buffone contends that her supervisor informed her that her last days of work would be July 4-July 7, 2003, and took Buffone off the management schedule. *Id.* Buffone submits she would have stayed at La Rosetta through November 1, 2003, if she had a choice; her doctor's medical restrictions would not have prevented her from doing so. *Id.* ¶¶ 10-11, 29. It is undisputed that Buffone's doctor never told her she had to leave La Rosetta or that she could no longer perform her duties.

Rosebud contends Buffone was taken off the schedule because she said she was tired and could not work on her feet anymore. Pl. Ex. 1 (Burke Dep.) 27:6-23, 29:17-19. Buffone's supervisor denies that she told Buffone she was "getting big," "getting too big," or "you're getting too big, we have to get you out of there." *Id.* 28:20-24.

Two months after leaving La Rosetta, Buffone contacted Nancy Krause, a Rosebud corporate employee, regarding her health insurance. Krause told Buffone to write and fax two letters to Rosebud's corporate office on September 21, 2003, back-dating the letters July 1, 2003. Buffone contends that Krause told her what to write in the letters. Pl. Facts ¶ 16. Rosebud disagrees. However, Krause admitted in her deposition that "I told [Buffone] . . . that if she wanted her family leave to begin when she left the company, the letters would have to look something like this." Pl. Ex. C (Krause Dep.) at 26:1-5. One letter requested 12 weeks of "family leave" from July 8, 2003 to September 30, 2003. It is undisputed that Rosebud

2

designated those 12 weeks as Buffone's FMLA leave. The second letter requested a month of "medical leave" from October 1, 2003 to October 31, 2003.

Buffone told Krause her baby was due November 3 when the two discussed the letters. Pl. Facts ¶ 17. Further, Buffone asserts that Krause never told her that she could structure her FMLA leave as she saw fit, rather than in a 12 week continuous span, or that she was subject to termination if she exceeded 12 weeks leave. Pl. Facts ¶ 19-20. On September 29, Krause wrote a letter informing Buffone that she would be eligible for COBRA benefits on October 1, 2003. Buffone argues the COBRA letter establishes she was terminated on October 1, 2003. Pl. Facts ¶ 22.

Buffone gave birth to her son on November 17, 2003. According to Rosebud, Buffone was unable to return to work until late January 2004. Def. Facts ¶ 39. The parties do not dispute Buffone was unable to return to work until at least the end of December 2003. Buffone contends that her former supervisor told her in January 2004, that her position was filled and that La Rosetta had no room for her. Pl. Facts ¶ 35.

Buffone filed a complaint with the Equal Employment Opportunity Commission and Illinois Department of Human Rights on April 16, 2004. She received her right-to-sue letter on June 30, 2005 and timely filed this case.

## ANALYSIS

### I. Legal Standard

In considering Rosebud's motion for summary judgment, all facts are construed in Buffone's favor. *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 598 (7th Cir. 2002). Summary judgment is appropriate if the record demonstrates there is no genuine issue of material

3

fact that would reasonably support a verdict in Buffone's favor, and that Rosebud is entitled to judgment as a matter of law. *Id.*

## II. Pregnancy Discrimination Act

The Pregnancy Discrimination Act (PDA) forbids employment discrimination based on "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k) (amending the terms "because of sex" and "on the basis of sex" to include protection for pregnant women). Count I of the complaint alleges Rosebud discriminated against Buffone because she was pregnant. Buffone may use either the direct or indirect method to prove her claim. *Venturelli*, 350 F.3d at 599.

### A. Direct Method

Two kinds of evidence are probative of pregnancy discrimination under the direct method: direct evidence and circumstantial evidence. *Id.* Direct evidence requires facts that establish discrimination without reliance on inference or presumption. *Id.* Circumstantial evidence of discrimination allows a factfinder to infer discrimination. *Id.*

Rosebud contends Buffone provides no direct evidence. However, Buffone states that her supervisor told her in June 2003, "you're getting too big, we have to get you out of there." Pl. Facts ¶ 6. Direct evidence of discrimination essentially requires an admission that an adverse employment action is based on prohibited animus. *Venturelli*, 350 F.3d at 599. Taken in the light most favorable to Buffone, her supervisor's statement could reasonably be interpreted as direct evidence of pregnancy discrimination. Her supervisor knew that Buffone was pregnant at the time the statement was made, so the assertion that she was "getting too big" could be

interpreted as a reference to her pregnancy, and that the pregnancy motivated a decision to remove Buffone from the management schedule.

Rosebud argues Buffone offers no circumstantial evidence of discrimination. Four kinds of circumstantial evidence support an inference of discrimination: (1) suspicious or ambiguous comments, timing, or behavior; (2) systematically better treatment of similarly situated, non-pregnant employees; (3) evidence that the plaintiff received disparate, and less favorable, treatment than similarly situated non-pregnant employees; and (4) evidence that the employer's stated reason for the disparate treatment is pretextual. *Id.* Each of the categories may establish discrimination alone or in conjunction with evidence in other categories. *Id.*

Buffone has offered the first, third, and fourth categories of circumstantial evidence. Her supervisor's remarks that she was "getting big," "getting too big," and "you're getting too big, we have to get you out of there" constitute circumstantial evidence under the first category. Viewed in the light most favorable to Buffone, the remarks constitute circumstantial evidence supporting an inference of discrimination. A reasonable jury could infer that "getting too big" meant that Buffone's pregnancy was beginning to show, and that her supervisor "had to get [Buffone] out of there" because she held discriminatory *animus* toward Buffone as a pregnant woman.

Buffone argues that her replacement by a non-pregnant female indicates disparate treatment of non-pregnant employees under the third category of circumstantial evidence. In response, and for the first time in its reply, Rosebud argues Buffone was taken off the management schedule in July 2003 because she told her supervisor she was tired, and could no longer work standing on her feet. It is elementary that Rosebud cannot raise new facts or argument for the first time in its reply. *Weizeorick v. ABN AMRO Mortgage Group, Inc.*, No. 01

5

C 713, 2004 WL 1880008, at *2 (N.D. Ill. Aug. 3, 2004) (Hibbler, J.) (citing *Multi-Ad Services, Inc. v. N.L.R.B.*, 255 F.3d 363, 370 (7th Cir.2001)). Even if considered, this belated argument is unavailing. Buffone contends she was taken off the schedule because she was "too big" and that she never asked her supervisor to take her off the schedule. This factual dispute, if resolved in Buffone's favor, could establish the fourth category of circumstantial evidence: that Rosebud's proffered reason is "unworthy of belief, a mere pretext for discrimination." *Venturelli*, 350 F.3d at 601. A reasonable jury could find that the supervisor's comments and Buffone's replacement by a non-pregnant female constitute sufficient direct and circumstantial evidence of pregnancy discrimination under the direct method. Therefore, summary judgment is inappropriate.

Rosebud argues that the supervisor's remarks are not causally related to her removal from the schedule. To be probative of discrimination, case law requires a causal relationship between isolated remarks and adverse employment action. *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996). Viewing the facts in the light most favorable to Buffone, a reasonable jury could find that a causal relationship exists between the supervisor's comments and the adverse action. Buffone told her supervisor she was pregnant on June 9, 2003. Soon afterward, Buffone was told she was "getting big," "getting too big," and "you're getting too big, we have to get you out of there." Then, Buffone was omitted from the management schedule on July 8th. A reasonable jury could find that the supervisor's remarks were causally related to the adverse employment action, and therefore sufficient to constitute direct evidence of pregnancy discrimination.

**B.  Indirect Method**

Buffone may prove her PDA claim using the indirect method of proof under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). She must first establish a *prima facie* case of

discrimination by showing: (1) she was pregnant; (2) she performed to Rosebud's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated, non-pregnant employees were treated more favorably. *Geier*, 99 F.3d at 241. If she establishes a *prima facie* case, the burden shifts to Rosebud to produce a legitimate, nondiscriminatory reason for its adverse action. *Id.* at 241-42. Buffone may then produce evidence that the proffered explanation is pretextual. *Id.* at 242.

Rosebud argues Buffone has failed to establish the fourth element of her *prima facie* case by failing to identify similarly situated, non-pregnant employees who were treated more favorably. However, the parties do not dispute that a non-pregnant female replaced Buffone. Replacement by a non-pregnant employee is sufficient to establish the fourth element of a *prima facie* case. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 726 (7th Cir. 1998) (fourth element of *prima facie* case requires showing "that there were other similarly situated non-pregnant [employees] who . . . replaced plaintiff").

Rosebud offers a nondiscriminatory reason for its actions for the first time in its reply. Namely, that Buffone was taken off the management schedule because she was tired and could no longer work on her feet. However, Buffone presents evidence she was taken off the management schedule by her supervisor because she was "too big." A reasonable jury could find Buffone's explanation is more credible, and find in her favor. The disputed facts preclude summary judgment on the PDA claim.

### III. Federal Medical Leave Act

The FMLA entitles eligible employees to 12 weeks unpaid leave each year for medical reasons, including pregnancy complications. 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.114(e)

("an employee who is pregnant may be unable to report to work because of severe morning sickness"). Employers who interfere with, restrain, or deny employees' rights to leave and post-leave reinstatement or retaliate against employees who exercise their rights are subject to suit. 29 U.S.C. §§ 2615(a), 2617(a); *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) (citing § 2615(a)). Buffone alleges two alternate claims under the FMLA: interference with FMLA rights and retaliation for exercise of FMLA rights.

A.  **Interference Claim**

To prevail on her FMLA interference claim, Buffone must establish that Rosebud interfered with, restrained, or denied her right to FMLA leave and that she suffered injury as a result. 29 U.S.C. §§ 2615(a), 2617(a); *Harrell v. USPS*, 445 F.3d 913, 928 (7th Cir. 2006) (affirming summary judgment for employer where employee was not injured by violation of FMLA). As this court held in denying Rosebud's motion to dismiss, Rosebud was obligated to properly advise Buffone of her FMLA rights so she could structure her leave in an informed manner. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004) (reversing summary judgment for employer); *Sims v. Schultz*, 305 F. Supp. 2d 838, 845 (N.D. Ill. 2004) (denying motion to dismiss FMLA claim because employee may have restructured leave to avoid exceeding 12 weeks).

Viewing the facts in the light most favorable to Buffone, a reasonable jury could find in her favor on her FMLA interference claim. Buffone claims Rosebud forced her to take FMLA leave from July 8 to September 30. She also claims Rosebud never informed her that she could structure her leave in another manner. She was injured because she used her 12 weeks of leave long before she needed them – leading up to and after the birth of her son in November. Because

8

she did not work after her 12 weeks of FMLA leave were exhausted, Rosebud was at liberty to fire her and replace her for absenteeism. This is precisely what Rosebud did.

Rosebud makes two closely related arguments that Buffone cannot establish any injury. Rosebud first argues Buffone cannot establish an interference claim because she would have exhausted her FMLA leave by the time she could return to work in January, so she was not prejudiced by any FMLA violations. Second, Rosebud argues that its failure to notify her that it designated her FMLA leave did not prejudice her because she would have exhausted her 12 weeks of leave before she could return to work in January. Both of these arguments are premised on Rosebud's assertion that Buffone's FMLA leave began on September 21, 2003, or on October 1, 2003. If Buffone's leave began on either date and ran continuously, the 12 weeks would have expired before Buffone was ready to return to work in January.

Rosebud fails to explain this premise in light of the undisputed fact that Rosebud designated July 8 to September 30 as Buffone's FMLA leave. The argument is unavailing in any case. No matter when Buffone's leave began, if Rosebud forced Buffone to take FMLA leave and failed to properly advise her of her FMLA rights, Buffone has a cause of action. Just as in its motion to dismiss, Rosebud fails to cite any case addressing employers' obligation to advise employees about FMLA rights. Rosebud was required to give Buffone an opportunity to structure her leave in an informed manner. A reasonable jury could find Buffone was not given the opportunity to do so. Rosebud is not entitled to summary judgment on Buffone's FMLA interference claim.

**B.    Retaliation Claim**

Rosebud moves for summary judgment on Buffone's FMLA retaliation claim. Rather than respond to the summary judgment motion, Buffone – in a footnote to her summary judgment response – requests to voluntarily dismiss the retaliation claim pursuant to Fed. R. Civ. P. 41(a)(2). The request for voluntary dismissal was not noticed in a motion on the court's call. The footnote request will not be ruled on because it is not properly before the court. Local Rule 5.3(b). This court considers Rosebud's motion for summary judgment on the retaliation claim unopposed.

Even if a motion for summary judgment is unopposed, the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993). Employers are prohibited from discriminating against employees who have used FMLA leave. 29 U.S.C. § 2615(a); *Kauffman*, 426 F.3d at 884. Retaliation claims under the FMLA are evaluated applying the same direct and indirect methods used to evaluate PDA claims described above. Under the direct method, Buffone must present direct or circumstantial evidence that Rosebud retaliated against her for using her FMLA leave. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Under the indirect method, Buffone must first establish a *prima facie* case by demonstrating: (1) she took FMLA leave; (2) she satisfied Rosebud's legitimate performance expectations; (3) Rosebud took adverse employment action against her; and (4) similarly situated employees who did not take FMLA leave were treated differently. *Id.*[1] If Rosebud presents no evidence in response,

---

[1] Rosebud cites *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999) for the elements of a *prima facie* FMLA retaliation claim, including a causal relationship between the leave and the adverse employment action. A causal relationship is no longer a requirement of FMLA retaliation claims in this Circuit. *Hill v. Stoughton Trailers, LLC*, 45 F.3d 949, 951 (7th Cir. 2006).

10

Buffone is entitled to summary judgment. *Id.* However, if Rosebud presents unrebutted evidence of a nondiscriminatory reason for its adverse employment action, it is entitled to summary judgment. *Id.*

Viewing the facts in the light most favorable to Buffone, the only evidence she has indicating retaliation using the direct method is the temporal proximity of her termination on October 1, 2003 to her FMLA leave from July 8 to September 30, 2003. While there is no bright-line rule establishing the amount of evidence an employee must submit to avoid summary judgment on a retaliation claim, it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004). This is particularly true in this case. Rosebud submits that Buffone was terminated because she took more than her allotted 12 weeks of leave. When she did not return to her job after September 30, Rosebud was at liberty to terminate her. Buffone has not raised, nor does the record reflect, an issue of material fact on this particular issue.

For similar reasons, Buffone's retaliation claim fails under the indirect method. Assuming she could establish a *prima facie* case, Buffone has failed to dispute the nondiscriminatory reason offered by Rosebud: failure to return to work after exhaustion of 12 weeks FMLA leave. *Buie*, 366 F.3d at 503. Buffone has submitted facts which, if true, demonstrate that Rosebud interfered with her exercise of FMLA rights. However, these facts are not probative of her retaliation claim. Even if Rosebud improperly forced Buffone to take FMLA leave from July 8 to September 30, Buffone was not entitled to more than 12 weeks leave. Rosebud was at liberty to terminate her. Even in the light most favorable to Buffone, the facts warrant summary judgment for Rosebud on the FMLA retaliation claim.

## CONCLUSION

Rosebud's motion for summary judgment is granted in part and denied in part.

Rosebud's unopposed motion for summary judgment on the FMLA retaliation claim is granted.

The motion is denied with respect to Buffone's PDA and FMLA interference claims.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

June 28, 2006